## J. F. THOMAS, ET AL. v. B. B. WHITAKER'S ADMR.

[Abstract Kentucky Law Reporter, Vol. 7—43.]

**Fraudulent Conveyance.**

    While fraud charged in the conveyance of land to hinder and defeat creditors must usually be gathered from circumstances, yet the finding of its existence must not result from mere suspicion but from evidence sufficient to overcome the presumption of fair dealing.

**Fraudulent Intent of a Grantor Alone.**

    The conveyance of real estate can not be set aside on proof alone of the fraudulent intention of the grantor, and it will not be set aside when the proof shows that the grantee acted in good faith without notice or knowledge of such fraud, or of facts which would put him on inquiry.

### APPEAL FROM McLEAN CIRCUIT COURT.

June 9, 1885.

OPINION BY JUDGE HOLT:

J. F. Thomas was liable as surety for a fund borrowed from the court's receiver, about 1872, and the right to which was settled in July, 1878, and execution then awarded.

By a deed dated December 10, 1878, and which was acknowledged and recorded three days thereafter, he conveyed to his two sons, the appellants, M. L. and R. G. Thomas, a tract of land of 138 acres, for the consideration as recited in it of one thousand dollars, three hundred to us, in hand paid, a receipt whereof is hereby acknowledged, and the balance, seven hundred dollars, secured by promissory note, payable on the 15th day of January, 1879. He was the owner of another tract of land which was mostly embraced by the homestead allotted to him; but the remainder of it with so much of his personal property as was not exempt to him was sold toward the payment of said liability, and it not being fully satisfied thereby, this action was brought on December 10, 1880, upon a return of no

property, to set aside said deed as fradulent and subject the land conveyed by it to the payment of the balance. Appellants denied that there was any fradulent intent upon the part of the vendor, J. F. Thomas, but further alleged that even if this were so that they had no notice of it, and were bona fide purchasers for value.

The only ground upon which the judgment below can be sustained, and it is the one upon which the appellee relies, is that the father and appellants do not agree in their testimony with the recitations of the deed or with each other as to the terms of the purchase, or when the payments were made.

Thus the father says that three hundred dollars was not paid when the purchase was made, but that R. G. Thomas paid one hundred dollars, being his one-half of the price, in the spring of 1880; that M. L. Thomas paid him one hundred dollars in December, 1880, two hundred not long thereafter and the remaining two hundred in November, 1881; and that there was a seven hundred dollar note which he surrendered to R. G. Thomas about the last named date.

M. L. Thomas agrees with his father in the statement that he made three payments, but does not state definitely when they were made, save that he paid the last two hundred dollars in the fall of 1881. He also says that he thinks the note was for nine hundred dollars, and due in one and two years, but that his brother has it.

The latter says that it was for one thousand dollars, and dated about January 15, 1879; that owing to its being paid it was surrendered to him a short time before he gave his deposition; that it then had some credits upon it which he did not notice closely, and that he burnt it.

It is true that these statements are quite contradictory of each other, and of the terms of the deed, but the witnesses are perhaps entitled to the more credit by reason of them, because they tend strongly to show the absence of any made up story.

A witness may be very well mistaken as to when a payment was made, and it is not unnatural to suppose that the parties to a deed who may not have had confidence in each other by reason of relationship or otherwise complied with its term as to the time of payment or the credit to be given. It is noticeable that the wife of J. F. Thomas united in the deed, that it was written by a neighbor, that there was apparently no haste in the making of it; that al-

though a judgment awarding an execution was rendered, in July, 1878, yet that the deed was not made until December 10, 1878; and that the record fails to explain, why the land in the interval was not seized for the debt. The deed was not recorded for three days after it was written, and it then appeared from the fact of it that the greater portion of the purchase money was unpaid. One of the sons was then twenty-seven and the other twenty-two years old, and the latter had been allowed to do business for himself for several years before attaining his majority. The testimony shows that they were able financially to purchase the land; that after 1878 it was not assessed by their father, and that they mainly, at least, have controlled and cultivated it, one of them having lived upon it the most of the time since their alleged purchase. These circumstances pro and con create doubt, and we naturally look for some central, controlling fact which will guide us to the truth.

The appellant, R. G. Thomas, married in December, 1879. He soon thereafter obtained, through his wife, about four hundred dollars. This record shows that he had been paid other money for stock and otherwise, and both he and his father testify that he paid his one-half of the price of the land in the spring of 1880, and he says that he used the money obtained through his wife toward it.

In addition to this a disinterested witness, who, as the testimony shows was not procured for the occasion, testifies that he was present and saw it paid, and the son says that not a cent of it was ever returned to him in any way. It is difficult to escape the conclusion that all this is true, and passing from results to cause it shows that there had, in fact, been a previous transaction and purchase, and greatly strengthens the testimony of the father and the other son as to the payments made by the latter, and while they differ as to when they were made, yet both the father and the two sons testify that all of the purchase money has been paid. To concur with the court below we must conclude that all three of them are guilty of deliberate perjury.

The testimony is not in our opinion sufficient to authorize such a conclusion. While fraud must usually be gathered from circumstances, yet the finding of its existence must not result from suspicion but from testimony sufficient to overcome the presumpton of fair dealing.

An effort was made to show that one thousand dollars was an inadequate price for the land, but it resulted in failure. But three

witnesses testified for the plaintiff upon this point.  He says that it was worth in December, 1878, two thousand dollars, another says that in his opinion one thousand dollars was rather low for it, and the remaining one testifies that it was worth then not over the last named sum; all the witnesses for the appellants who speak of it agree with him.  It is true that the father gave twenty-five hundred dollars for it in 1870, but in 1878 the county owed a railroad debt of sixty thousand dollars, while its entire taxable property was worth but two hundred thousand dollars.

The precinct in which the land is situated already owed fourteen hundred dollars to each one hundred dollars worth of property in it, and land in it had consequently declined fifty per cent., and there was absolutely no market whatever for it.

Granting that the father had an intention to avoid the payment of the appellee's debt, yet both of the sons testify that if so, they had no notice of it, and after careful examination and consideration of the entire record we do not think the judgment below was authorized, and it is reversed and cause remanded with directions to dismiss the action.

Judgment *reversed.*

*Wm. B. Noe, for appellants.*

*W. N. Sweeney, Jeff C. Johnson, for appellee.*